UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-62061-CV-HURLEY

**CERTAIN INTERESTED UNDERWRITERS
AT LLOYD'S, LONDON,**

    **Plaintiffs,**

v.

**AXA EQUITABLE LIFE INSURANCE
COMPANY, et al.,**

    **Defendants.**
_____/

## ORDER GRANTING PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff, Certain Interested Underwriters at Lloyd's, London's ("Underwriters'") Motion for Partial Summary Judgment [ECF No. 54]. The motion was originally directed at the initial Complaint [ECF No. 1]. However, on April 16, 2013, the Court granted Plaintiff leave to file an Amended Complaint solely to add an additional and independent basis for its claim for declaratory relief. Because the allegations forming the basis of the instant motion for partial summary judgment are exactly the same between the Complaint and the Amended Complaint, the Court will treat the instant motion as though it had been filed with respect to the Amended Complaint. Prior to the amendment of the Complaint, the motion had been fully briefed by all parties.

In the motion, Plaintiff seeks summary judgment on its claim for declaratory judgment that it has no duty to defend Defendant Steven Brasner in two consolidated actions against him (the

"Underlying Actions").[1]  Defendant AXA Equitable Life Insurance Co. ("AXA") filed a response in which it takes no position on the motion.  Defendants Brasner and The GIII Accumulation Trust ("GIII") have filed responses in opposition, and Plaintiff has filed replies.  The motion is now ripe for adjudication.

## I.  JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties, including each of the Underwriters syndicates participating in the subject insurance policy, are completely diverse, and the amount in controversy exceeds $75,000.  Venue is proper under 28 U.S.C. § 1391 because the underlying facts took place in this district.

## II.  BACKGROUND

Underwriters issued an Insurance Professionals Errors and Omissions Policy with Employment Practices Liability Coverage (the "Policy"), Am. Compl. Ex. C [ECF No. 81-3], to Steven Brasner with a coverage period from March 18, 2008 to March 18, 2009.  The Policy obligates Underwriters to "pay on behalf of the Insured those sums in excess of the deductible . . . which the Insured shall become legally obligated to pay as Damages resulting from any Claim(s) . . . for any Wrongful Act of the Insured in the performance of or failure to perform Professional Services . . . ." *Id.* at 14 (typeface adjusted).[2]  Defendants AXA and GIII have brought claims against Brasner in the Underlying Actions that would potentially result in liability covered by the Policy.

---

[1] The underlying actions were filed in this district and are captioned as follows: *AXA Equitable Life Insurance Company v. Infinity Financial Group, LLC* (No. 9:08-cv-80611) (the "AXA lawsuit") and *The GIII Accumulation Trust v. Brasner* (No. 9:08-cv-61508) (the "GIII lawsuit").

[2] Exhibit C includes multiple documents with inconsistent numbering.  For this reasons, citations thereto will reference the page number in the header generated by CM/ECF.

Underwriters filed this action seeking a declaration that it would not owe coverage, either a duty to indemnify or a duty to defend, for any liability resulting from the Underlying Actions.

The Underlying Actions each arise from Brasner's involvement in stranger-originated life insurance ("STOLI") policies, which are generated for the investment purposes of third parties rather than to insure the lives of people with whom the policy holders have a personal connection or relationship. Brasner is alleged to have participated in the applications for these sorts of policies and, in so doing, to have included misrepresentations in the agent certificates provided to AXA in connection with the applications. For example, the AXA Complaint alleges that Brasner falsely represented to AXA that the proposed insureds did not intend to offer the policies for which they were applying on any secondary market and that he had not been involved in any discussions regarding the sale or assignments of the policies. Am Compl. Ex. A, ¶ 39 [ECF No. 81-1]. Similarly, the GIII Complaint alleges that Brasner included misrepresentations in the agent certificates provided in connection with the applications for the insurance policies at issue in that case and that these misrepresentations caused the policies to be rescinded. The AXA Complaint alleges damages in the form the commissions AXA paid to Brasner as the insurance agent for the policies. The GIII Complaint alleges damages in the form of the expenses GIII paid to acquire the life insurance policies that have since been nullified due to the inaccuracies in the applications.

In the instant motion, Underwriters seeks a judgment declaring that it does not owe a duty to *defend* the Underlying Actions on the specific basis that coverage for the liability that might arise therefrom is excluded by the Policy's criminal conduct exclusion. The criminal conduct exclusion provides as follows:

3

> We will not defend any Claim or pay any Damages or Claim Expenses based upon, arising out of, directly or indirectly relating to or in any way involving:
>
> [. . .]
>
>> 7. Conduct which is fraudulent, dishonest, criminal, willful, malicious, intentionally or knowingly wrongful, or otherwise intended to cause damage or injury to personal property; however, this exclusion shall not apply:
>>
>>> a. unless there is a finding or adjudication in any proceeding of such conduct or an admission by an Insured of such conduct; or
>>>
>>> b. to any person who did not actually commit or have prior knowledge of or participate in a concealment of any criminal, dishonest, fraudulent or malicious act, error or omission.

Am Compl. Ex. C, 16-17 [ECF No. 81-3].

Plaintiff argues that this exclusion applies following the conclusion of criminal proceedings instituted against Brasner in April 2010 in the circuit court for the Fifteenth Judicial Circuit of Florida. Brasner was charged by information with multiple counts of insurance fraud and grand theft. Am. Compl. Ex. D. Brasner pleaded "guilty/best interest" to Counts 1, 13, and 21 of the Information for grand theft of over $100,000, insurance fraud, and organized scheme to defraud of over $50,000, respectively, and was adjudicated guilty of these crimes. Am. Compl. Exs. E, F.

### III. DISCUSSION

#### A. *Standard on Motion for Summary Judgment*

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

4

*Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *See Matsuhita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### B.    *Duty to Defend*

GIII and Brasner argue that Underwriters is bound by a duty to defend for several reasons. First, GIII contends that resolution of this issue is barred by the stay the Court previously entered and that the motion is otherwise premature. These arguments fail.

This matter was initially stayed on January 27, 2011 due to the pendency of the previously described criminal proceedings against Brasner. *See* Order Granting Mot. to Stay [ECF No. 31]. The criminal proceedings have since concluded, and in its Order of May 8, 2012 partially lifting the stay over this action, the Court specifically stated that "Plaintiff's claim for declaratory relief may proceed as to the issue of its duty to defend Defendant Steven Brasner in the related action[s]." ECF No. 48. Accordingly, the Court will resolve the issue of Underwriters' duty to defend. Although some of the issues involved in the duty to defend may overlap with the ultimate question of coverage, consistent with the stay, the Court will only resolve the former.

In addition, GIII's contention that summary judgment is premature is unsupported by reference to any discovery or affirmative defense that it might have asserted if given time to do so.

5

This case has undoubtedly followed an usual path owing to the parallel criminal proceedings and the simultaneous litigation of the underlying claims. Nevertheless, GIII has shown no substantive reason why the Court cannot properly resolve the issues presented in the motion at this stage, nor has it requested an extension of time to oppose the motion setting forth the particular reasons an extension is necessary.

As GIII concedes, nothing in Federal Rule of Civil Procedure 56 requires a party to wait until the pleadings have closed to seek summary judgment, and many courts have observed that the timing of motions for summary judgment must be tailored to the particular circumstances of individual cases. *See, e.g.*, *Exigent Tech. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1310 (11th Cir. 2006) ("A Rule 56(f) motion [for a continuance to conduct additional discovery] must demonstrate, with particularity, what facts the movant hopes to obtain by discovery and how these facts will raise a genuine issue of fact."); *Diez v. Washington Mut. Bank*, No. 09-CV-2390 (JS)(WDW), 2012 WL 601454, at *4 (E.D.N.Y. Feb. 23, 2012); *Charvat v. ACO, Inc.*, No. 8:12CV13, 2012 WL 847328, at *4-5 (D. Neb. March 13, 2012) (permitting additional discovery only to the extent the requesting party persuades the court "that discovery is necessary to uncover . . . facts relevant to disposition of the Motion"). While it is true that pre-discovery summary judgment motions remain the exception to the rule, *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303-04 (2d Cir. 2003), GIII has not demonstrated any discovery that would be required to address the issues presented by the instant motion. The only factual issues GIII alludes to concern "the facts underlying Brasner's conviction." Response 13 [ECF No. 59]. Under the terms of the policy, the facts underlying the conviction are irrelevant so long as it has been established that the conduct was *criminal*. *See* Am Compl. Ex. C,

6

16-17 [ECF No. 81-3];[3] *see also Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 391 (8th Cir. 2010).

Finally, GIII also argues that it is improper to consider facts that go beyond the allegations in the underlying cases in determining the duty to defend and that, even if the Court does so, Underwriters cannot establish that the criminal convictions in state court relate to GIII's allegations against Brasner. For the reasons addressed in the following sections, the Court also rejects these arguments.

*1. Consideration of Facts Outside of the Underlying Complaints*

Florida abides by the general rule that an insurer's duty to defend is governed by the allegations of the complaint and not the facts that are ultimately proved true. *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977). This principle is based on the reasoning that if an insured is sued for covered actions based on false allegations, the insurer should be required to prove the allegations' falsity in the context of defending the insured at trial and not in refusing to do so. *See* Allan D. Windt, *Insurance Claims and Disputes* § 4:4 (5th ed. 2007); 14 *Couch on Ins.* § 200:19 (3d ed. 2005).

However, certain exceptions to the general rule exist. For example, "an insurer should not have a duty to defend an insured when the facts alleged in the complaint ostensibly bring the case within the policy's coverage, but other facts that are not reflected in the complaint and are unrelated

---

[3] Of course, Underwriters must also establish that the criminal conduct is sufficiently related to the claims in the underlying lawsuits to implicate the criminal conduct exclusion as to those claims. The Court discusses this issue in Part B.2., *infra*.

7

to the merits of the plaintiff's action plainly take the cause outside the policy coverage." *Id.* § 4.4. In other words, while it is true that the allegations in the complaint are controlling as an initial premise, when an insurer brings an action for a declaratory judgment that it has no duty to defend because of the applicability of a policy exclusion that is based on facts extraneous to the complaint, a court need not blind itself to facts outside the complaint.

This exception is illustrated by the Fifth Circuit's opinion in *Rowell v. Hodges*, 434 F.2d 926 (5th Cir. 1970). In *Rowell*, the court, applying Florida law, determined that the general rule described above should not apply when an insured is sued based on an auto accident in which the insured was not driving the covered vehicle, regardless of whether the vehicle the insured was driving can be determined from the face of the complaint. *Id.* at 928-30. Reaching the same conclusion, other courts have elaborated and held that "when coverage . . . depends upon a factual issue which will not be resolved by the trial of the third party's suit against the insured may depend upon the actual facts and not upon the allegations in the complaint." *Burd v. Sussex Mut. Ins. Co.*, 267 A.2d 7, 9 (N.J. 1970). Courts have been especially likely to consider extraneous evidence that contradict superfluous allegations in a complaint when the actual facts are undisputed, as in determining the actual date of an accident so as to determine whether it occurred during a period of coverage. *See, e.g.*, *Guar. Nat'l Ins. Co. v. C de Baca*, 907 P.2d 210, 214-15 (N.M. Ct. App. 1995).

In the instant case, GIII contests Underwriters' position that the crime exclusion applies by arguing that because the applicability of the exclusion cannot be determined solely by reference to the underlying complaints, it cannot be considered when determining the duty to defend. The exclusion requires a finding or adjudication of criminal conduct in a proceeding, and,

understandably, no allegation of such a finding occurs in the underlying complaints. Based on the same reasoning applied in *Rowell*, *Burd*, and *C de Baca*, cited supra, the Court rejects this argument. The Court finds that when, as in the instance case, the duty to defend is contested based on facts that are (a) easily verified and (b) will not be resolved by the underlying litigation because they are irrelevant to the underlying claims, a court may consider facts outside of the underlying pleading in determining whether an insurer is subject to a duty to defend. Accordingly, the Court will consider the evidence in the record demonstrating that Brasner has been convicted of grand theft of over $100,000, insurance fraud, and organized scheme to defraud of over $50,000. The Court next considers whether these convictions are sufficiently related to the causes of action in the underlying actions such that the criminal conduct exclusion applies.

*2. Applicability of the Criminal Conduct Exclusion*

As described above, the Policy includes an exclusion for criminal conduct: "We will not defend any Claim . . . directly or indirectly relating to or in any way involving . . . [c]onduct which is fraudulent, dishonest, [or] criminal." Am Compl. Ex. C, 16-17 [ECF No. 81-3]. The Policy further states that this exclusion does not apply "unless there is a finding or adjudication in any proceeding of such conduct." Thus, to determine the applicability of this exclusion, the Court must consider both the claims and the crimes of which Brasner was convicted.

**(a)     Criminal Convictions**

On November 7, 2011, the Circuit Court of the Fifteenth Judicial Circuit of Florida adjudicated Brasner guilty of Counts One, Thirteen, and Twenty-One of the Information by which he was charged. Mot. Ex. F [ECF No. 54-6]. The facts underlying the nature of these Counts are

9

set forth in the Information. Mot. Ex. D [ECF No. 54-4]. Count One alleges that Brasner knowingly endeavored to obtain or use $100,000 or more of money that was the property of Transamerica Life Insurance Company in violation of Florida Statute 812.014(1) and (2)(a). *Id.* at 2. Count Thirteen alleges that, between 2006 and 2007, Brasner knowingly presented false or misleading information as part or in support of an insurance application to AXA with intent to injure, defraud, or deceive in violation of Florida Statute 817.234(1)(a)3. *Id.* at 5. Finally, Count Twenty-One alleges that, between 2006 and 2007, Brasner "engage[d] in a scheme constituting a systematic, ongoing course of conduct with intent to defraud . . . or to obtain property from one or more persons by false or fraudulent representations . . . ." *Id.* at 6.

Normally, to obtain a more detailed understanding of the facts underlying a criminal conviction resulting from a guilty plea, the Court would look to the statement of facts provided by the State during the plea colloquy. In the instant case, however, the statement of facts is not a part of the record. AXA, however, acknowledged in its response to the instant motion that Brasner pleaded guilty to criminal fraud charges that are related to its claims against Brasner in the underlying suit. AXA's Response 1 [ECF No. 57]. Moreover, the probable cause affidavit, which *is* part of the record in this case, confirms AXA's concession. The affidavit specifically states that the matter was "based on information received from Susan Paugh, Manager of Internal Audit Investigations with AXA Equitable Life Insurance Company . . . ." *Id.* The affidavit goes on to state that insurance applications and certifications written by Brasner falsely indicated that the policies being sought would not be sold for any type of pre-death financial settlement. *Id.* The affidavit stated that Brasner earned over $1 million in commissions and that he would not have received this

10

commissions but for the false representations in the applications and certifications. *Id.* The affidavit specifically mentions the policies AXA issued to Carol Sciolino, Elaine Gelch, Walter Glass, Geoffrey Glass, and Harlan Altman and policy issued by Transamerica Life Insurance Company to Jennie Koff. *Id.* 11-12. Finally, the affidavit stated that these acts occurred between March 24, 2006 and April 27, 2007.

### (b) Claims in the AXA & GIII Cases

The AXA Complaint, Mot. Ex. B [ECF No. 54-2], alleges that Brasner, as AXA's appointed independent insurance broker, procured and submitted applications for policies containing misrepresentations that resulted in the issuance of policies to Harlan Altman, Elaine Gelch, Geoffrey Glass, and Carol Sciolino. *Id.* ¶¶ 53-94. The AXA Complaint alleges that Brasner falsely stated that the applicants did not intend to use the policies in connection with any secondary market for viaticals and that he did so with the intent to perpetrate a fraudulent "STOLI scheme." *Id.* ¶¶ 134-35.

The GIII Complaint, Mot. Ex. C [ECF No. 54-2], relates to the Geoffrey Glass policies. It alleges that GIII, through a complicated series of trusts and assignments, acquired the beneficial interests in the Geoffrey Glass policies and that these policies have since been voided due to misrepresentations in the applications and agent certificates prepared and submitted by Brasner.

### (c) Comparison of Criminal Convictions & Civil Claims

Having compared the criminal charges to the allegations underlying the civil claims in the AXA and GIII cases, the Court finds that the criminal conduct exclusion applies to the civil claims so as to absolve Underwriters of the duty to defend Brasner. It is clear from the record that the claims against Brasner in the underlying cases arise from the exact same misrepresentations that

11

Brasner has been convicted of committing. The Policy expressly states that Underwriters will not defend any claim "based upon, arising out of, directly or indirectly relating to or in any way involving . . . [c]onduct which is . . . criminal." Am Compl. Ex. C, 16-17 [ECF No. 81-3]. This expansive language is sufficient to encompass the claims in the underlying law suits because it is clear that "one of the direct or indirect causes of the loss was a criminal act," namely, Brasner's knowing presentation of false information as part or in support of the AXA insurance applications. *Gulf Underwriters Ins. Co. v. KSI Servs., Inc.*, 233 F. App'x 239, 241 (4th Cir. 2007).

While it is true that the claims in the GIII action are based more particularly on misrepresentations Brasner made to GIII, not to AXA, the misrepresentations to GIII were *directly related* to the earlier misrepresentations he had made to AXA in submitting insurance applications and agent certificates. Thus, even though GIII's claims are not the direct civil analogue of the criminal charges the way the AXA claims are, they plainly arise at least indirectly from Brasner's criminal conduct. And, because the record demonstrates that the criminal conduct has been established by an adjudication in a proceeding, as required by the Policy, Am Compl. Ex. C, 16-17 [ECF No. 81-3], the criminal conduct exclusion absolves Underwriters of its duty to defend Brasner under the Policy in both the GIII and AXA actions.

## IV. CONCLUSION

In light of the foregoing, the Court will grant Plaintiff's motion for partial summary judgment and hold that Underwriters does not owe Brasner a duty of defense in the underlying AXA and GIII lawsuits.

The Court notes that the reasoning in this Order may also justify a judgment that the criminal

Order Granting Plaintiff's Motion for Partial Summary Judgment
Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Insurance Co.
Case No. 10-cv-62061-DTKH

conduct exclusion applies to Underwriters' duty to indemnify Brasner for any liability that might arise from the underlying lawsuits.  However, to the extent that no liability has been established, such a judgment would continue to be premature.  Nevertheless, the parties are encouraged to incorporate the reasoning in this Order into their ongoing efforts to reach an extrajudicial resolution.

It is hereby **ORDERED** and **ADJUDGED** that:

1. Plaintiff's Motion for Partial Summary Judgment [ECF No. 54] is **GRANTED**.

2. Plaintiff is directed to submit a proposed partial judgment no later than **TEN (10) DAYS** after the date of this Order.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 18th day of June, 2013.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record and all pro se parties*