UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-62061-CV-HURLEY

**CERTAIN INTERESTED UNDERWRITERS
AT LLOYD'S, LONDON,**

      Plaintiffs,

v.

**AXA EQUITABLE LIFE INSURANCE
COMPANY, et al.,**

      Defendants.
_____/

### ORDER ABATING DEFENDANT GIII'S COUNTERCLAIM AND STRIKING DEFENDANTS' AFFIRMATIVE DEFENSES

**THIS CAUSE** is before the Court upon Plaintiffs' Motion to Dismiss and Motion to Strike [ECF No. 83]. Plaintiff seeks to dismiss the counterclaim of the GIII Accumulation Trust and to strike GIII and Steven Brasner's affirmative defenses.[1] For the reasons to follow, the Court will grant the motion to dismiss in that it will abate GIII's counterclaim as described below. In addition, the Court will strike each of the affirmative defenses.

### BACKGROUND

The background of this action is set forth in a prior order. *See* Order Granting Pl's Mot. for Partial Summ. J 2-4 [ECF No. 89]. Briefly, Plaintiffs insured Defendant Steven Brasner under a professional liability policy. Brasner was sued in a separate action (the "liability suit") by

---

[1] The motion also includes a reference to sanctions pursuant to chapter 44.105 of the Florida Statutes, which the Court will discuss below.

Defendants AXA Equitable Life Insurance Company ("AXA") and the GIII Accumulation Trust ("GIII").  Plaintiffs then filed the instant action seeking a declaration that they owed no duty to defend or indemnify Brasner in the liability suit due to the applicability of an exclusion for criminal conduct.  Plaintiffs subsequently amended the Complaint to add as an additional basis for a declaration of no coverage that the full amount available under the policy had already been used to pay defense expenses.

GIII and Brasner filed an Answer [ECF No. 82] that included affirmative defenses of (1) failure to state a claim, (2) waiver and estoppel, and (3) unclean hands, and GIII also included counterclaims for common-law and statutory bad faith relating to Plaintiffs' handling of the claims against Brasner in the liability suit.  In the instant motion, Plaintiffs move to strike the Defendants' affirmative defenses and dismiss GIII's counterclaim.

## JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties, including each of the Underwriters syndicates participating in the subject insurance policy, are completely diverse, and the amount in controversy exceeds $75,000.  Venue is proper under 28 U.S.C. § 1391 because the underlying facts took place in this district.

## DISCUSSION

### A.    *Motion to Dismiss*

#### *1.  Standard*

Granting a motion to dismiss is appropriate when a pleading contains simply "a formulaic recitation of the elements of a cause of action."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544

(2007). To survive a motion to dismiss, a pleading must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence" in support of the claim and that plausibly suggest relief is appropriate. *Id.* On a motion to dismiss, the pleading is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright*, 795 F.2d at 967.

### 2. Application

Plaintiffs offer several bases for dismissing GIII's counterclaims. Because the Court finds that the first of these—specifically, that the statutory and common-law bad-faith claims are not ripe—is sufficient, the Court need not consider Plaintiffs' remaining arguments.

Florida law is clear that in order to bring a claim for bad faith refusal to settle, a plaintiff (or, in this case, Counterclaimant GIII) must show entitlement to a payment of the underlying claim, such as by reference to a judicial adjudication or a settlement agreement. *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 483 F.3d 1265 (11th Cir. 2007); *see also Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289 ("[A]n insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue."). Because the question of Brasner's—the insured's—entitlement to payment under the policy with the Plaintiffs has not been established in the manner required by Florida law but is, in fact, pending before this Court, any bad-faith claim that depends on Brasner's entitlement to payment is premature.

GIII argues that it has satisfied the *Blanchard* rule because Plaintiffs have already paid the full limits of the policy. *See* Am. Compl. ¶ 85 [ECF No. 81] ("[Plaintiff has] no obligation to defend

3

or indemnify Brasner because the subject policy limit has been exhausted."). On this basis, GIII reasons that coverage is moot, no justiciable controversy remains, and a bad-faith claim against the insurer can proceed. Response 16 [ECF No. 87]. According to GIII, the rule barring bad-faith suits prior to a favorable coverage determination "depends on there being potentially available funds still left under the policy over which the insured and the insurer can litigate." *Id.*

To support this proposition, GIII cites three cases, but none actually espouse the rule GIII would have the Court apply. In *Marraccini v. Clarendon National Insurance Co.*, for example, the court did not find that the bad-faith claim was ripe solely because the policy limits had been paid out. Rather, the court specifically observed that the "insurer's payment of policy limits *through settlement* establishe[d] that the insured had a valid claim and act[ed] as a verdict in favor of the insured." No. 02-20896-CIV, 2003 WL 22668842, at * 3 (S.D. Fla. Oct. 1, 2003) (emphasis added). In reaching this conclusion, the court cited *Central Magnetic Imaging v. State Farm Mutual Automobile Insurance Co.*, wherein the court stated that an insurance company's decision to settle a disputed case is "the functional equivalent of a confession of judgment or a verdict in favor of the insured." 745 So. 2d 405, 407 (Fla. 3d DCA 1999). This is entirely consistent with the rule stated above that the issue of coverage must be resolved in the insured's favor prior to the accrual of a bad-faith claim on the insured's behalf. *Blanchard*, 575 So. 2d at 1291. In the instant case, there has been no judicial determination of coverage nor any settlement of a disputed claim. Thus, the issue of coverage is still unresolved, and GIII's bad-faith claim is not ripe.[2]

---

[2]The same analysis applies to *Ludwig v. Liberty Mutual Fire Insurance Co.*, No. 8:03CV2378-T-17-MSS, 2004 WL 3323791, at *2 (M.D. Fla. Nov. 19, 2004), wherein the court

4

Unlike the other two cases on which GIII relies, the court's decision in *Detweiler v. AXA re America Insurance Co.*, No. 3:06-cv-744-J-32MCR, 2006 WL 3762073, at *3 (M.D. Fla. Dec. 20, 2006), considered payment on a claim generally as opposed in the context of a formal settlement. In finding that a bad-faith claim was not necessarily premature, the court determined that the insurer's payment on the policy constituted an acknowledgment of coverage. *Id.* at *3. Assuming that such payments are sometimes sufficient to establish coverage for the purposes of a bad-faith claim, the Court finds that the payments in the instant case are distinguishable from those in *Detweiler*. There, the insurer initially offered only $25,000 of coverage for hurricane damage before subsequently paying in excess of $240,000 over the two years following its initial offer. *Id.* at *1. The insurer stated upon its final distribution that it had fully compensated the insured for all of its damages and was closing her case. *Id.* In her bad-faith claim, the insured argued that the insurer should have compensated her loss sooner than it did and that, if the insurer had done so, substantial consequential damages could have been avoided.[3] *Id.* On these facts, it was reasonable to conclude that the insurer had acknowledged that the insurer's loss was covered, and the only remaining questions were whether the insurer accurately assessed the extent of the damage and whether it

---

observed that the insurer did not dispute "that it ha[d] conceded liability to the Plaintiff by settling the matter for the value of the policy limits."  The issue in *Ludwig*, therefore, was whether the settlement the parties executed operated to released the insured's bad-faith claim.  *Ludwig* is inapplicable to the instant case, in which Plaintiffs have never conceded liability, no settlement has been reached, and there is no issue of contract interpretation that will resolve whether GIII has released its bad-faith claim.

[3]Specifically, the insured stated that the initial damage, which she was unable to treat without the insurance proceeds, was exacerbated by subsequent rain and mold.

5

compensated the insured in a timely manner.

In the instant case, by contrast, Plaintiffs have contested whether Brasner's losses were covered under the policy from the outset and never suggested to him that it had fully compensated his damages and was closing his case. GIII has not offered any argument that Plaintiffs' payments to Brasner for the sake of providing him with a defense in the liability suit constitute an acknowledgment of coverage of his ultimate liability (as distinct from an acknowledgment of the broader duty to defend). Meanwhile, Plaintiffs have offered substantial arguments that indemnity coverage does not exist.

The Court appreciates the difficulty that might arise if the full amount of coverage had been paid and the parties no longer had any incentive to bring a lawsuit that would establish the existence of coverage. However, that is not the case here. The coverage issue is currently before the Court. Thus, there can be no concern at this point that the issue has been mooted in a way that would leave the question of coverage unresolved and preclude GIII from vindicating its claim. Rather, the only question is of timing, and the Court finds that considerations of prudence and efficiency, as well as Florida law, dictate that the bad-faith claim be considered only after the resolution of the coverage issue presented by Plaintiffs' declaratory judgment action.

### 3. Conclusion

In light of the foregoing, the Court finds that GIII's bad-faith counterclaim is not ripe for adjudication. Having reached this conclusion, the Court must now determine whether to dismiss or abate the counterclaim. GIII argues that abatement is the more efficient alternative. *O'Rourke v. Provident Life & Accident Ins. Co.*, 48 F. Supp. 2d 1383, 1384-85 (S.D. Fla. 1999). The Court

agrees and will therefore accede to GIII's preference and abate its counterclaim until such time as the coverage issues that comprise Plaintiffs' declaratory judgment action have been finally resolved.[4]

### B.  *Plaintiff's Motion to Strike*

Federal Rule of Civil Procedure 12(f) provides that a court may strike an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading.  "An affirmative defense will . . . be stricken . . . if the defense is insufficient as a matter of law." *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002).  "A defense is insufficient as a matter of law only if:  (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law."  *Id.*  Motions to strike are generally disfavored and are usually denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties."  *Scelta v. Delicatessen Support Servs., Inc.*, 57 F.Supp.2d 1327, 1347 (M.D. Fla. 1999).

Upon review, the Court finds that GIII and Brasner's (the "Defendants'") first affirmative defense—failure to state a claim—is patently frivolous.  *Flav-O-Rich, Inc. v. Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense.").  Failure to state a claim must be the subject of a motion to dismiss, not the basis of an affirmative defense.  This defense will therefore be stricken

---

[4]In their reply, Plaintiffs argue that the counterclaim should be dismissed with prejudice in light of the Court's finding that Plaintiffs owe Brasner no duty of defense.  Plaintiffs argue that if they owe no duty of defense, they necessarily owe no duty of indemnity either.  *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419 (Fla. 3d DCA 1995).  While this reasoning may be accurate, the issue of indemnity has not yet been resolved.  Until the issue has been resolved, the Court declines to preemptively dismiss the bad-faith claim with prejudice.

with prejudice.

The Defendants' remaining affirmative defenses may have some possible relation to the instant controversy, so ordinarily, in light of the disfavor with which Courts look on motions to strike, the Court might deny the motion to strike as to these defenses, finding that no prejudice would result. However, apart from Rule 12(f), all pleadings must comply with Rule 8, which requires a responsive pleading to "state in short and plain terms its defenses to each claim asserted against it." Under Rule 8, the pleading must "allege enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the pleading need not provide detailed factual allegations, it must provide more than bare-bones conclusions.

The Defendants' second and third affirmative defenses are literally nothing more than bald assertions that a particular legal doctrine applies to this case. *See, e.g.*, Answer ¶ 91 [ECF No. 82] ("[Plaintiff] should be barred from obtaining the relief it seeks due to its own unclean hands."). In response, GIII argues that the answer and counterclaims "contain numerous pages of detailed description of [Plaintiffs'] conduct in this matter which gives rise to the affirmative defenses." Response 19 [ECF No. 87]. However, it is inappropriate for GIII to place the burden on Plaintiffs and on the Court to sift through "pages" of allegations to determine which GIII might have intended to form the basis of each of its defenses. Rather, the onus is GIII to select the facts that are relevant to each defense and state them as part of that defense. This way, both the Court and the other parties are fairly apprised of not just the name of a defense GIII may wish to invoke but also the manner in which GIII suggests the defense applies to the facts of the instant case.

Accordingly, the Court will strike the Defendants' second and third affirmative defenses

without prejudice for the Defendants to reassert them in a manner consistent with Rule 8.

### C.     The Mediation Privilege

Throughout the instant motion, Plaintiffs assert that Defendants violated the mediation privilege and contend that sanctions are appropriate. Plaintiffs argue that by referencing their conduct at mediation conferences—specifically, their responses to offers of settlement and details about their own offers or lack of offers—Defendants have violated federal and state laws that make such communications privileged.

In light of the Court's conclusions in the preceding sections, much of Plaintiff's appeal to the mediation privilege is rendered moot. The allegedly infringing comments formed the basis of GIII's bad-faith claim, which the Court will abate and which may never be resurrected, depending upon the progression of Plaintiff's declaratory judgment. For this reason and because Plaintiff did not include a specific request for sanctions in the wherefore clause of its motion, as is required under Rule 7(b)(1)(C), Fed. R. Civ. P., the Court will deny any request for sanctions without prejudice for Plaintiff to reassert its request, if it chooses, as part of a formal motion that complies with Rule 7. Otherwise, the Court declines to resolve the particular issues the emerged in the parties' briefs regarding the mediation privilege. Based on the reasoning already set forth herein, the Court will grant the relief Plaintiff sought. Thus, further analysis of particular issues is unnecessary.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Plaintiff's motion to dismiss [ECF No. 83] is **GRANTED** in that GIII's counterclaim is **ABATED** pending the resolution of Plaintiff's claim for declaratory judgment.

Order Granting Motion to Dismiss Defendant's Counterclaim and Granting Motion to Strike Affirmative Defenses
Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Insurance Co.
Case No. 10-cv-62061-DTKH

    3.    Plaintiff's motion to strike [ECF No. 83] is **GRANTED** to the following extent:

        (a)    Plaintiff's first affirmative defense is **STRICKEN WITH PREJUDICE.**

        (b)    Plaintiff's second and third affirmative defenses are **STRICKEN WITHOUT PREJUDICE**.

    4.    Plaintiff's request for sanctions is **DENIED WITHOUT PREJUDICE**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 26th day of July, 2013.

_____
Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*