UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-62061-CV-HURLEY/HOPKINS

CERTAIN INTERESTED UNDERWRITERS
AT LLOYD'S, LONDON,

    Plaintiffs,

v.

AXA EQUITABLE LIFE INSURANCE,
COMPANY, and GIII ACCUMULATION
TRUST et al.,

    Defendants.
_____/

**ORDER GRANTING PLAINTIFFS' MOTION FOR
FINAL SUMMARY JUDGMENT**

**THIS CAUSE** comes before the Court upon Plaintiffs Certain Interested Underwriters at Lloyd's, London's ("Lloyd's") Motion for Final Summary Judgment [ECF No. 150] against Defendant AXA Equitable Life Insurance Company ("AXA"). Plaintiff Lloyd's seeks a final judgment from this Court declaring it has no duty to indemnify its insured, Steven M. Brasner, for the claims filed against him by AXA in a separate case, *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, No. 08-cv-80611. Defendant AXA opposes Lloyd's motion, arguing that because it has dismissed its claims against Brasner, the issue of indemnity has become moot.

**I.**    **BACKGROUND**

Lloyd's issued a professional errors and omissions policy to Steven M. Brasner, a life insurance broker. Brasner then engaged in a criminal scheme of life insurance fraud, harming Defendants AXA, the party issuing the life insurance policies, and GIII Accumulation Trust,

LLC ("GIII"), the party investing in them. Brasner entered a plea of guilty to his criminal scheme, discussed more fully in the Court's opinion at *Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins., Co.*, 981 F. Supp. 2d 1302, 1303–05 (S.D. Fla. 2013).

AXA and GIII filed suit against Brasner for the harm caused to them by Brasner's fraud. The cases were consolidated at *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, No. 08-cv-80611. In its complaint, AXA alleged that its injuries arose from the misrepresentations Brasner made on the applications for the five following insurance policies: the Harlan Altman policy, the Elaine Gelch policy, the Geoffrey Glass policy, the Walter Glass policy, and the Carol Sciolino policy. Each of the applications for these policies was dated between January 1, 2006 and December 31, 2007.

The Court stayed AXA's case against Brasner pending arbitration. After the arbitration panel dismissed AXA's action without prejudice, AXA requested that the Court do the same. Accordingly, the Court dismissed AXA's action without prejudice on October 22, 2013.[1]

During the pendency of the consolidated actions, Lloyd's filed suit against AXA and GIII seeking a declaratory judgment that it had no duty to defend or indemnify Brasner for AXA or GIII's lawsuits against him. *Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins. Co., et al.*, No. 10-cv-62061. On Lloyd's motion, the Court granted partial summary judgment on the issue of the duty of defense, finding that Lloyd's had no duty to defend Brasner against either AXA or GIII. [ECF Nos. 89, 93]. Although the Court later vacated its order as to GIII, it reaffirmed that Lloyd's had no duty to defend Brasner against

---

[1] On March 18, 2013, the Court entered a consent judgment between GIII and Brasner, expressly reserving GIII's right to pursue to Lloyd's.

AXA. [ECF No. 136]. Lloyd's then moved for summary judgment on the issue of indemnification. The Court granted the motion, finding that "the criminal conduct exclusion in Lloyd's professional error and omissions policy is operative and relieves Lloyd's of liability to Brasner and/or GIII." *Lloyd's*, 981 F. Supp. 2d at 1308. Lloyd's now moves for summary judgment on the issue of its duty to indemnify Brasner against AXA.

## II.     LEGAL STANDARD

A movant may obtain summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). The movant bears the burden of meeting this requirement. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The movant may discharge this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the movant discharges its burden, the burden then shifts to the nonmoving party to establish that there is a genuine dispute of material fact. *Id.* at 324. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the nonmoving party fails to make a sufficient showing, the movant is entitled to a judgment as a matter of law. *Celotex*, 477 U.S. at 323. When deciding summary judgment, the Court may look to materials in the record such as depositions, documents, affidavits or declarations, and admissions. Fed. R. Civ. P. 56(c)(3). The Court reviews all evidence and factual inferences in the light most favorable to the non-moving party, and resolves all reasonable doubts about the facts in favor of the non-movant. *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013).

### III. DISCUSSION

The "criminal conduct exclusion" of Lloyd's insurance policy with Brasner bars coverage for claims against him

> based upon, arising out of, directly or indirectly relating to or in any way involving . . . Conduct which is fraudulent, dishonest, criminal, willful, malicious, intentionally or knowingly wrongful, or otherwise intended to cause damage or injury to personal property; however, this exclusion shall not apply . . . unless there is a finding or adjudication in any proceeding of such conduct or an admission by an Insured of such conduct . . . .

In its previous order, the Court found that "Brasner, between January 1, 2006 and December 31, 2007, engaged in an ongoing scheme to defraud multiple insurance companies, one of which was AXA, by providing materially false information on applications." *Lloyd's*, 981 F. Supp. 2d at 1308. Reviewing Brasner's plea colloquy, the Court determined that this scheme included the fraudulent applications for the Glass, Altman, Gelch, and Sciolino polices. *Id.* The Court found that it was this scheme to which Brasner pled guilty, and it was conduct arising from this scheme that the policy excluded from coverage. *Id.*

In this case, AXA's complaint against Brasner arises from the same misrepresentations that constituted Brasner's criminal scheme. As before, Brasner's policy must exclude these claims from coverage. The parties have litigated this issue at length and the record is fully developed for the Court to determine, without hesitation, that Lloyd's has no duty to indemnify Brasner for AXA's claims against him. The underlying policy simply provides no coverage to Brasner given his undisputed actions. Given these facts, Lloyd's is entitled to a final judgment against AXA resolving this question for all time.

4

AXA opposes Lloyd's motion by arguing that the Court cannot decide this issue, for AXA has rendered it moot by dismissing its claims against Brasner. Lloyd's seeks declaratory judgment against AXA pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which applies only in "a case of actual controversy," *id.*, a requirement coterminous with the "case" or "controversy" requirement of Article III, Section 2, of the Constitution. *See MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)); *Provident Life & Accident Ins. Co. v. Transamerica-Occidental Life Ins. Co.*, 850 F.2d 1489 (11th Cir. 1988). Under Article III, a case or controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. According to AXA, because it has dismissed its claims against Brasner, "[t]here is no pending claim that creates a case or controversy for this Court to rule upon at this juncture."

While AXA's argument may apply to a dismissal *with prejudice*, it does not apply to a dismissal *without prejudice*. If the filing of an original suit satisfied an actual controversy that could warrant the issuance of a declaratory judgment, then a dismissal of that suit without prejudice does not moot that controversy. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004) (Tjoflat, J.). In *Klay*, the Court of Appeals considered whether a claim dismissed without prejudice could proceed to arbitration. *Id.* Reversing the district court, the Court of Appeals held that it could. *Id.* at 1111. Applying Article III's case or controversy requirement to arbitration, the Court of Appeals reasoned that "notwithstanding the plaintiffs['] dismissal, they could have refiled suit—in state or federal court, potentially in a myriad of

5

jurisdictions—based on those claims at any time. As such, we cannot conclude that the defendants, in seeking declaratory relief through arbitration, were not pursuing a live case or controversy." *Id.* at 1107 (citations omitted).

The parties do not dispute that AXA's claims against Brasner initially created an actual controversy. And here, as in *Klay*, the Court dismissed AXA's claims against Branser without prejudice. AXA can therefore refile its claims against Brasner, thereby triggering the potential for Lloyd's duty to indemnify. AXA's dismissal without prejudice implies the potential of renewed action with all the accompanying expense. Accordingly, there remains a live case or controversy to be adjudicated, and Lloyd's motion is not rendered moot.

Nevertheless, even if the Court found that Lloyd's motion were moot, there remains a second equally compelling justification for today's decision. The pleadings in this case reflect that the Court and the parties focused their attention on the distinction between an insurer's duty to defend and its duty to indemnify. They recognized that "[a]n insurer's duty to defend its insured is separate from and broader than its duty to indemnify the insured." *Hale v. State Farm Fla. Ins. Co.*, 51 So.3d 1169, 1171 (Fla. 4th DCA 2010). Both the Court and the parties, however, overlooked the correlative principle that a finding of no duty to defend, as a matter of Florida law, necessarily includes a finding of no duty to indemnify. *See Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify.") (quoting *Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.*, 595 F. Supp. 2d 1319, 1322

6

(S.D. Fla. 2009)) (internal quotation marks omitted).[2] Therefore, the Court's order of June 18, 2013, denominated as an "Order Granting Partial Summary Judgment" [ECF No. 89], predicated on a determination that Lloyd's owed no duty to defend Brasner in the underlying AXA or GIII lawsuits, necessarily included a determination that Lloyd's owed no duty to indemnify Brasner. The descriptive limitation "Partial" in the order's title was incorrect. As indicated, the order resolved all questions pending in the case and, but for the entry of a judgment, brought judicial labor to an end. The corresponding "Partial Judgment" [ECF Nos. 93 and 136] was in reality a final judgment that Lloyd's had neither a duty to defend nor a duty to indemnify. Today's decision then is simply a confirmation of an earlier holding.

---

[2] *Peters v. Trousclair*, 431 So. 2d 296, 298 (Fla. 1st DCA 1983) ("Thus, a determination that there is no duty to defend against a particular claim carries with it 'the inevitable conclusion that there is none to pay an eventual judgment which be entered upon that claim.'") (quoting *Fed. Ins. Co. v. Applestein*, 377 So. 2d 229, 233 (Fla. 3d DCA 1979)); *Applestein*, 377 So. 2d at 233 ("It has thus been uniformly held that a determination that there is no duty to defend against a particular claim carries with it the inevitable conclusion that there is none to pay an eventual judgment which may be entered upon that claim."); *Burlington Ins. Co., Inc. v. Normandy General Partners*, 2014 WL 1045737, at *3 (11th Cir. Mar. 19, 2014) ("If, on the other hand, the insurer had no duty to defend the insured, it necessarily follows that it had no duty to indemnify.") (citing *Fun Spree*, 659 So. 2d at 421–22); *Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) (holding that because there was no duty of defense, "Illinois National was not in breach for failing to provide a defense and holds no duty to indemnify Trailer Bridge") (citing *Fun Spree Vacations, Inc.*, 659 So. 2d at 422); *First Specialty Ins. Corp. v. Milton Const. Co.*, 2012 WL 2912713, at *3 (S.D. Fla. July 16, 2012) ("A 'determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify.'") (quoting *Trailer Bridge, Inc.*, 657 F.3d at 1146); *Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.*, 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify."); *Nova Cas. Co. v. Wasterstein*, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006) ("The duty to defend is broader than the duty to indemnify, and thus, where the insurer has no duty to defend, it necessarily has no duty to indemnify. Because I find that Nova has no duty to defend 1108 or Mr. Wasterstein, it has no duty to indemnify them either."). Without a duty of defense, there can be no duty to indemnify. *See WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So.3d 904, 906 (Fla. 2d DCA 2009) ("[T]he duty to indemnify is narrower than the duty to defend and thus cannot exist if there is no duty to defend."); *Essex Ins. Co. v. Big Top of Tampa, Inc.*, 53 So. 3d 1220, 1224 (Fla. 2d DCA 2011) ("Because Essex has no duty to defend Big Top in O'Fell's action against Big Top, Essex has no corresponding duty to indemnify."); *WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 907 (Fla. 2d DCA 2009) ("Having concluded that AISLIC had no duty to defend, we likewise conclude that it had no duty to indemnify WellCare for the sums it paid to settle the Thomas action."); *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So.2d 419, 422 (Fla. 3d DCA 1995) ("Since Orion had no duty to defend the insureds, correspondingly, there is no duty to indemnify them nor to pay the consent judgment."); *Auto-Owners Ins. Co. v. E.N.D. Servs., Inc.*, 506 Fed. App'x 920, 927 (11th Cir. 2013) ("Because Auto-Owners owne no duty to defend E.N.D., it does not owe any duty to indemnify E.N.D. . . . .") (citing *WellCare of Fla.*, 16 So. 3d at 906).

7

Case 0:10-cv-62061-DTKH Document 153 Entered on FLSD Docket 07/10/2014 Page 8 of 8
Order Granting Plaintiffs' Motion for Final Summary Judgment
*Lloyd's v. AXA*, No. 10-62061-CV-Hurley/Hopkins

## IV. CONCLUSION

For the aforementioned reasons, it is hereby

**ORDERED** and **ADJUDGED** that:

1. Plaintiffs' Motion for Final Summary Judgment [ECF No. 150] is **GRANTED**. The Court will enter Final Judgment by separate order.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 10th day of July, 2014.

>                             Daniel T. K. Hurley
>                             United States District Judge

*Copies provided to counsel of record*